**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **TRINITY MANUFACTURING, INC., *et al.*,** | |
| **Plaintiffs,** | |
| **v.** | **Court No. 20-03831**<br>**Senior Judge Timothy C. Stanceu** |
| **UNITED STATES,** | **PUBLIC VERSION** |
| **Defendant.** | |

**PLAINTIFFS' REPLY BRIEF**


Adam H. Gordon, Esq.
Jennifer M. Smith, Esq.
Ping Gong, Esq.
Lauren Fraid, Esq.
**THE BRISTOL GROUP PLLC**
1707 L Street NW
Suite 570
Washington, DC 20036
Tel: (202) 991-2701


Date: June 17, 2021


*Counsel to Plaintiffs Trinity Manufacturing, Inc., Ashta Chemicals, Inc., and Niklor Chemical Company, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

SUMMARY OF ARGUMENT ..... 1

ARGUMENT ..... 3

I. COMMERCE'S CLAIM THAT PLAINTIFFS FAILED TO DEMONSTRATE EXTRAORDINARY CIRCUMSTANCES IS CONTRARY TO THE RECORD EVIDENCE ..... 3

A. Commerce Omits Significant Facts and Events Regarding Plaintiffs' Efforts to Address and Remedy the Missed Deadline ..... 4

B. The Record Evidence Does Not Support Commerce's Finding that the Medical Condition Did Not Constitute An Unexpected Event ..... 5

II. COMMERCE HAS NOT DEMONSTRATED THAT THE AGENCY'S BURDEN IN ACCEPTING THE SUBMISSION OUTWEIGHS THE COMPETING INTERESTS OF ACCURACY AND FAIRNESS ..... 9

III. COMMERCE'S DISCRETION REGARDING DEADLINES DOES NOT JUSTIFY ITS DISPARATE TREATMENT OF PLAINTIFFS' EXTENSION REQUEST ..... 12

CONCLUSION ..... 21

**PUBLIC VERSION**

# TABLE OF AUTHORITIES

## CASES

*Artisan Mfg. Corp. v. United States*,
__ C.I.T. __, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ............ 11

*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*,
412 U.S. 800 (1973) ............ 13

*Bosun Tools Co., Ltd. v. United States*,
__ C.I.T. __, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) ............ 10, 12

*British Steel PLC v. United States*,
127 F.3d 1471 (Fed. Cir. 1997) ............ 13

*Celik Halat ve Tel Sanayi A.S. v. United States*,
__ C.I.T. __, 483 F. Supp. 3d 1370 (Ct. Int'l Trade 2020) ............ 12, 13

*Celik Halat ve Tel Sanayi A.S. v. United States*,
__ C.I.T. __, 485 F. Supp. 3d 1404 (Ct. Int'l Trade 2020) ............ 11, 12, 13

*Chisholm v. Def. Logistics Agency*,
656 F.2d 42 (3d Cir. 1981) ............ 13

*DAK Ams. LLC v. United States*,
__ C.I.T. __, 456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ............ 13, 14

*Dongtai Peak Honey Indus. Co., Ltd. v. United States*,
777 F.3d 1343 (Fed. Cir. 2015) ............ 11, 14

*Grobest &I-Mei Indus. (Vietnam) Co. v. United States*,
36 C.I.T. 98, 815 F. Supp. 2d 1342 (2012) ............ *passim*

*Leslie Salt Co. v. United States*,
55 F.3d 1388 (9th Cir. 1995) ............ 6

*Nakornthai Strip Mill Pub. Co. v. United States*,
32 C.I.T. 1272, 587 F. Supp. 2d 1303 (2008) ............ 13

*N.H. Hosp. Ass'n v. Azar*,
887 F.3d 62 (1st Cir. 2018) ............ 6

*NTN Bearing Corp. v. United States*,
74 F.3d 1204 (Fed. Cir. 1995) ............ 9, 10, 11

*Pro-Team Coil Nail Enter., Inc. v. United States*,
__ C.I.T. __, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ............ 9, 10

PUBLIC VERSION

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001)....................13, 14

*Star Fruits S.N.C. v. United States*,
393 F.3d 1277 (Fed. Cir. 2005)....................10

*Timken U.S. Corp. v. United States*,
434 F.3d 1345 (Fed. Cir. 2006)....................9, 10

*Tung Mung Dev. Co. v. United States*,
25 C.I.T. 752 (2001)....................6

*Xiping Opeck Food Co. Ltd. v. United States*,
__ C.I.T. __, 378 F. Supp. 3d 1340 (Ct. Int'l Trade 2019)....................9

## REGULATIONS

19 C.F.R. § 351.107....................6

19 C.F.R. § 351.302.................... *passim*

## ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS

*Modification of Regulation Regarding the Extension of Time Limits*,
78 Fed. Reg. 3,367 (Dep't Commerce Jan. 16, 2013)....................6

*Extension of Time Limits*,
78 Fed. Reg. 57,790 (Dep't of Commerce Sept. 20, 2013)....................5, 6

## SUMMARY OF ARGUMENT

In an obvious abuse of its discretion, the U.S. Department of Commerce ("Commerce") revoked an antidumping ("AD") order on chloropicrin from China that had been in place for nearly four decades after Plaintiffs' representative, impaired by medical and technical issues, inadvertently missed one deadline in an uncontested sunset review. As soon as he became aware that he had missed the filing deadline, Plaintiffs' representative took immediate and urgent steps to address and remedy his oversight, including a request for a retroactive extension of the deadline that was accompanied by the filing at issue. After being retained in this matter, the undersigned immediately undertook additional steps, including (but not limited to) filing a supplement to the retroactive extension request that was apparently overlooked, a request for reconsideration, further information regarding the extraordinary circumstances involved, and engaging in two separate meetings with Commerce staff. These earnest efforts were for naught, as Commerce refused to grant the extension request and accept the filing, notwithstanding the disproportionate and draconian consequences that resulted. Indeed, Commerce failed to mention many of these efforts in its brief.

In an attempt to defend its decision, Commerce selectively ignores the record and misconstrues applicable precedent. *First*, Commerce presents an incomplete and inaccurate narration of the facts that, troublingly, omits key events and information. The agency then uses its distorted narrative to assert that inattentiveness caused Plaintiffs' representative to miss the deadline. An accurate review of the record in its entirety belies Commerce's claim, showing that Plaintiffs' representative's medical condition could not have been prevented if reasonable measures had been taken, and precluded him from timely filing an extension request through all reasonable means. Simply put, how would someone know to file an extension request when, due

to the cumulative effects of ongoing medical issues, he had no idea the deadline had been missed the deadline in the first place and indeed believed the filing was made? Only an overzealous and unreasonable application of the regulations would find that the situation did not constitute an extraordinary circumstance.

*Second*, Commerce argues, inaccurately, that the Court's abuse of discretion balancing test in *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 C.I.T. 98, 815 F. Supp. 2d 1342 (2012), no longer applies, and that, regardless, the burden the agency would incur by accepting the submission outweighs Plaintiffs' interests of fairness and accuracy. Again, Commerce's claims run counter to law and the record evidence. Contrary to Commerce's assertion, the Court continues to use the *Grobest* balancing test analysis that it has employed for nearly 10 years. This analysis weighs strongly in favor of Plaintiffs, who will suffer hugely disproportionate and severe consequences by virtue of Commerce's decision — *viz.*, revocation of a long-standing AD order that Commerce itself has deemed to be necessary for several decades. Conversely, Commerce will experience no harm whatsoever by granting Plaintiffs' extension request and accepting their substantive response in the uncontested sunset review.

*Third*, while Commerce enjoys discretion with respect to its deadlines, the agency may not engage in disparate treatment of similar situations. Commerce ignores its repeated decisions in other proceedings, where the agency has granted untimely extension requests under circumstances far less severe than those before the Court. In fact, many of the determinations involve entirely prosaic issues, such as incorrect calendaring or "the holiday season." Moreover, each of the decisions discussed below post-date the 2013 regulatory modification, and thus, were made under the "extraordinary circumstances" standard. Commerce fails to adequately explain

why it treated Plaintiffs' request differently than these prior requests. As these decisions show, Commerce's treatment of Plaintiffs' extension request is arbitrary and capricious.

In sum, Commerce abused its discretion and acted in an arbitrary and capricious manner when it denied Plaintiffs' extension request and refused to accept the substantive response. In light of the unique and extraordinary circumstances present in this case, Plaintiffs respectfully request that the Court grant their motion and order Commerce, *inter alia*, to grant the extension request, accept the substantive response, and reinstate the AD order.

## ARGUMENT

### I. COMMERCE'S CLAIM THAT PLAINTIFFS FAILED TO DEMONSTRATE EXTRAORDINARY CIRCUMSTANCES IS CONTRARY TO THE RECORD EVIDENCE

Commerce fails to acknowledge certain record evidence showing that Plaintiffs' representative innocently and inadvertently missed the deadline to file the substantive response due to extraordinary circumstances, both technical and medical in nature. As the record clearly shows, Plaintiffs described, in detail, the medical conditions their representative experienced prior to and on the submission due date. *See* P.R. 17[1] at Attachment 1; Pls.' Br. at 9-10. These circumstances were totally unforeseen. Commerce, however, ignores this evidence, glossing over key events and facts. The agency then relies on its incomplete and inaccurate recitation of the facts to contend that inattentiveness caused Plaintiffs to miss the substantive response deadline. An accurate assessment of the complete record, however, does not support Commerce's analysis.

[1] Documents on the public administrative record in this proceeding are referred to in this brief by the abbreviation "P.R." followed by the document number assigned to them in the administrative record filed with the Court (*i.e.*, "P.R. __"). Documents on the confidential record are referred to by the abbreviation "C.R." followed by the document number (*i.e.*, "C.R. __").

### A. Commerce Omits Significant Facts and Events Regarding Plaintiffs' Efforts to Address and Remedy the Missed Deadline

The timeline Commerce presents in its response brief omits important events, thereby leaving the misleading and inaccurate impression that Plaintiffs did not actively or expeditiously address and seek to remedy the missed deadline.

First, Commerce fails to acknowledge that in the three days immediately following the discovery of the missed deadline, Plaintiffs' representative made repeated attempts to contact Commerce officials. *See* P.R. 17 at Attachment 1 ¶ 17. The next day — having received no responses to his multiple messages — he filed a request pursuant to 19 C.F.R. § 351.302, asking Commerce to retroactively extend the deadline, and, simultaneously, tendered the substantive response, which was complete in all respects. *See id.*; *see also* P.R. 7-8. Commerce's brief entirely ignores these urgent efforts made by Plaintiffs' representative, which are not in dispute.

Second, Commerce insinuates that its September 28, 2020 rejection letter responded to Plaintiffs' September 25, 2020 submission, which included in-depth legal and factual analyses, that was filed by the undersigned counsel three days after they were retained. *See* Def.'s Br. at 3. This also is incorrect. As Plaintiffs' September 29, 2020 request for reconsideration states, Commerce's September 28 rejection "d{id} not even acknowledge, let alone discuss" the comments and analysis filed on September 25, 2020. P.R. 14 at 2. In fact, Plaintiffs' counsel "was not served a copy of the {September 28} letter via ACCESS; it appears that the Commerce team was unaware of the undersigned's entry of appearance, notwithstanding that it was made three days earlier." *Id.*

Third, Commerce ignores the October 1, 2020 and October 5, 2020 meetings the undersigned had with agency officials to discuss the extension request and request for reconsideration. *See* P.R. 20-21. Instead, Commerce's timeline jumps to October 7, 2020, the

date on which Plaintiffs submitted confidential supplemental information detailing the sensitive medical conditions affecting Plaintiffs' representative at the time the filing deadline was missed. *See* Def.'s Br. at 4. By excluding these key details from its recitation of facts, Commerce leaves the impression that Plaintiffs took little to no action to address and remedy the missed deadline. *See id.* This is simply false.

**B. The Record Does Not Support Commerce's Finding that the Medical Condition Did Not Constitute An Unexpected Event**

Commerce's determination that the representative's medical issues were not an unexpected event is decoupled from the record evidence and reality. To the contrary, the record evidence clearly demonstrates that Plaintiffs' representative suffered from a debilitating and unforeseen medical condition that caused him to inadvertently miss the submission deadline. *See* P.R. 7 at 2; P.R. 17 at Attachment 1.

Commerce offers three bases of support for its determination that the representative's medical condition did not qualify as unexpected event (specifically, a "medical emergency"): (1) "Plaintiffs made no reference to any medical issues until October 7, 2020 — more than a month after the substantive response was due, and after they retained new representation"; (2) Plaintiffs' representative "plainly was capable on working on the day of the deadline, given that he successfully submitted plaintiffs' response to the {International Trade Commission}"; and (3) "plaintiffs seem to now concede that no emergency occurred." Def.'s Br. at 7-8. None of these allegations support Commerce's determination.

As an initial matter, the language of 19 C.F.R. § 351.302(c)(2) does not support Commerce's overly narrow view as to what qualifies as an extraordinary circumstance. Commerce relies entirely on the preamble to the regulation, which lists a "medical emergency"

as an example of an extraordinary circumstance. *See* Def.'s Br. at 6-7 (citing *Extension of Time Limits*, 78 Fed. Reg. 57,790, 93 (Dep't of Commerce Sept. 20, 2013)).

Of course, preambles do not possess the same legal force as statutes or regulations, particularly where they are not subject to public notice and comment. *See, e.g.*, *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 76 (1st Cir. 2018) ("Although the 2008 regulation was subject to notice and comment, the preamble . . . was not."); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) ("It is undisputed that the preamble has not been subjected to notice and comment."). The preamble to 19 C.F.R. § 351.302(c)(2) was not subject to public notice and comment, appearing in the final rule only. *Compare Modification of Regulation Regarding the Extension of Time Limits*, 78 Fed. Reg. 3,367-70 (Dep't Commerce Jan. 16, 2013) (proposed rule) *with Extension of Time Limits*, 78 Fed. Reg. at 57,790-96 (final rule). Thus, the preamble was not the product of formal agency action. At most, the preamble is a policy statement that serves an interpretative function, which does not possess force of law. *See, e.g.*, *Tung Mung Dev. Co. v. United States*, 25 C.I.T. 752 (2001) ("The Preamble, although it was issued after the notice-and-comment rulemaking procedure that went into 19 C.F.R. § 351.107, is a policy statement, and not an agency interpretation that holds the 'force of law.'").

Moreover, the list of examples provided by the preamble is not exhaustive. Indeed, the preamble states that "{e}xamples of extraordinary circumstances include a natural disaster, riot, war, *force majeure*, or medical emergency." *Extension of Time Limits*, 78 Fed. Reg. at 57,793 (emphases added). There is nothing in the preamble that would preclude a medical "condition" from qualifying as an extraordinary circumstance under the regulation.

Putting these regulatory interpretation issues aside, the record evidence shows that the representative's medical condition constitutes an extraordinary circumstance. The medical

condition was an unexpected event that could not have been prevented if reasonable measures had been taken. It precluded Plaintiffs' representative from timely filing an extension request through all reasonable means because the resulting impairment led him to believe, incorrectly, that he had timely filed the substantive response. *See generally* P.R. 17 at Attachment 1.

As Plaintiffs have explained, the representative [

] both before and at the time Plaintiffs' substantive response to Commerce was due. *See* C.R.1/P.R. 17 at Attachment 1 ¶¶ 15-16. [

]. *See id.* at Attachment 1 ¶ 16. In fact, Plaintiffs' representative [

]. *See id.*

That Plaintiffs' representative did not initially disclose his medical condition to Commerce, due to its sensitive and personal nature, does not negate its severity or its physical and cognitive impact. *See* Pls.' Br. at 7, 10. Indeed, Commerce itself recognized the confidential and sensitive nature of this information by granting Plaintiffs' request that it be treated as information protected from public disclosure under the terms of the administrative protective order in the review. We respectfully submit that it is not unusual, human nature being what it is, for an individual to be hesitant to divulge sensitive medical information to a government agency. And it should be no surprise that undersigned counsel did its job and elicited this important additional information that was then presented to Commerce.

Ultimately, whether Commerce received the confidential medical information on Day 3 or Day 15 is irrelevant; once the agency received it, it had an obligation to consider it, and to reconsider its analysis in light of it. If Commerce is now suggesting that it had questions about the veracity of the information, it should have asked for additional information at the time. Moreover, Plaintiffs would take immediate exception to any effort by Commerce to cast aspersions on the information Plaintiffs presented below, or on counsel's actions developing and presenting this important information.

Similarly, Plaintiffs' representative's ability to work on the day of the deadline and submit a substantive response to the International Trade Commission ("ITC") does not render his medical issues foreseeable or insignificant. In actuality, that Plaintiffs' representative continued to work on the substantive response to meet Commerce's deadlines while suffering from a debilitating medical condition demonstrates diligence and attentiveness. *See id.* Despite his serious medical issues, Plaintiffs' representative "prepared the final document in accordance with the Department's requirements and in proper form for filing through ACCESS in timely manner," and filed Plaintiffs' substantive response before the ITC. P.R. 7 at 2; *see also* P.R. 17 at Attachment 1 ¶ 7. Moreover, every other filing at Commerce was made correctly and timely, as were all filings at the ITC in its parallel five-year review. *See* P.R. 17 at 4. These actions demonstrate a pattern of diligence, attentiveness, full cooperation, and timely participation by Plaintiffs. Plaintiffs' representative's unexpected oversight, caused by medical and technical issues, represents the <u>only</u> deviation from this pattern.

Further, contrary to Commerce's claim, Plaintiffs do not "concede that no emergency occurred." Def.'s Br. at 8. Rather, Plaintiffs merely point out that Commerce's overly narrow focus as to whether the ongoing medical condition constitutes an acute "emergency" is arbitrary

and capricious in light of Commerce's prior decision in a different case involving ___________ to grant an untimely extension request due to a months-long medical condition suffered by a party's counsel. *See* Pls.' Br. at 20. As discussed below, Commerce has granted other untimely extension requests for a wide variety of reasons, such as printer jams, clerical errors, or missed deadlines during holiday periods. None of these reasons is among the examples specifically enumerated in the preamble (*i.e.*, natural disaster, riot, war, *force majeure*, or medical emergency).

In sum, the record is clear that Plaintiffs' representative suffered from a serious and unforeseen medical condition that caused him to innocently and inadvertently miss the submission deadline.

## II. COMMERCE HAS NOT DEMONSTRATED THAT THE AGENCY'S BURDEN IN ACCEPTING THE SUBMISSION OUTWEIGHS THE COMPETING INTERESTS OF ACCURACY AND FAIRNESS

Plaintiffs do not dispute that Commerce has the ability and discretion to set and enforce its deadlines. Indeed, Plaintiffs recognize that such discretion is important and allows the agency to fulfill its statutory obligations. *See* Pls.' Br. at 11.

That said, the agency's discretion in deciding whether to accept an untimely-filed submission is not limitless. *See* Def.'s Br. at 8-10. The Court reviews such decisions under an abuse of discretion standard. *See, e.g.*, *Xiping Opeck Food Co. Ltd. v. United States*, __ C.I.T. __, 378 F. Supp. 3d 1340, 1344 (Ct. Int'l Trade 2019) (citing *Grobest*, 26 C.I.T. at 122-23, 815 F. Supp. 2d at 1365; *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006)); *Pro-Team Coil Nail Enter., Inc. v. United States*, __ C.I.T. __, 419 F. Supp. 3d 1319, 1331 (Ct. Int'l Trade 2019) ("Regarding the issue of untimeliness, it is well-settled that a deadline-setting regulation that 'is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion.'") (quoting *NTN*

*Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995)).

"An agency abuses its discretion when it issues a decision that 'represents an unreasonable judgment in weighing relevant factors.'" *Bosun Tools Co., Ltd. v. United States*, __ C.I.T. __, 405 F. Supp. 3d 1359, 1364-65 (Ct. Int'l Trade 2019) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (internal citation omitted)). Under this standard, the Court considers, on a case-by-case basis, "whether the interests of accuracy and fairness outweigh the burden placed on Commerce and the interest in finality" of the underlying determination. *Grobest*, 26 C.I.T. at 123, 815 F. Supp. 2d at 1365; *see also Timken U.S. Corp.*, 434 F.3d at 1353 (discussing the abuse of discretion standard described in *NTN Bearing Corp.*, 74 F.3d at 1208). Thus, if the interests of accuracy and fairness prevail in light of the facts of this case, Commerce has abused its discretion and the Court should set aside the *Final Results* as unlawful.

There is no question that the interests of accuracy and fairness weigh in Plaintiffs' favor. Commerce's denial of Plaintiffs' retroactive extension request inflicts extreme and grossly disproportionate consequences on Plaintiffs — revocation of an AD order that has been in place for nearly four decades, which both Commerce and the ITC have deemed necessary to protect the domestic industry from the recurrence of dumping and injury by reason of subject imports. *See* Pls.' Br. at 16-18. Indeed, it is hard to envision a scenario in which Commerce's denial of a retroactive extension request could have a more disproportionate, punitive, and severe effect on the domestic industry.

Conversely, Commerce would experience little or no burden by granting the request and accepting the substantive response. *See* Pls.' Br. at 15-16. Only the domestic industry appeared

in the sunset review, and the next event in the review (comments on the adequacy of responses) was not due for another month, and involved no action by Commerce. *See id.* at 5-6, 15-16.

In response to Plaintiffs' analysis, Commerce raises two unavailing arguments. First, Commerce directs the Court away from its established balancing analysis by suggesting that the *Grobest* standard is invalid under the current regulatory scheme and following the decision of the Court of Appeals for the Federal Circuit in *Dongtai Peak Honey Indus. Co., Ltd. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015). *See* Def.'s Br. at 10-11. *Grobest* remains valid law, however. Indeed, in 2020, the Court specifically relied on this standard with respect to the acceptance of untimely filings, stating that "Commerce abuses its discretion when it rejects information that would not be burdensome to incorporate and which would increase the accuracy of the calculated dumping margins." *Celik Halat ve Tel Sanayi A.S. v. United States*, __ C.I.T. __, 485 F. Supp. 3d 1404, 1412 (Ct. Int'l Trade 2020) ("*Celik AD*") (citing *Grobest*, 36 C.I.T. at 122-23, 815 F. Supp. 2d at 1365-66; *NTN Bearing Corp.*, 74 F.3d at 1207-08). Thus, Commerce's suggestion that *Grobest* no longer applies is incorrect.[2]

Second, Commerce makes a perfunctory assertion that it will incur a generalized burden by accepting late filings, and that this weighs against Plaintiffs' interests. *See* Def.'s Br. at 11 ("Furthermore, Commerce 'should not be burdened by requiring acceptance of untimely filings closer to the final deadline for the administrative review.'") (quoting *Dongtai Peak Honey*, 777 F.3d at 1352). This claim contravenes the facts of the case — facts which Commerce manifestly fails to take into account.

---

[2] Similarly, Commerce presents no support for its contention that the *Dongtai Peak* decision overturned *Artisan Mfg. Corp. v. United States*, __ C.I.T. __, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014). As discussed in Plaintiffs' opening brief, the *Artisan* and *Grobest* standards and factors remain intact today. *See* Pls.' Br. at 12-13 n.3. Nonetheless, Plaintiffs have distinguished the facts underlying the instant case from those present in *Dongtai Peak*. *See id.*

As the Court has held, general prejudice to Commerce does not always or automatically outweigh the interests of accuracy and fairness in a particular case. *See Bosun Tools*, __ C.I.T. at __, 405 F. Supp. 3d at 1365-66 ("Invocation of a general prejudice stemming from late submissions and the potential effect that cumulative late filings across all proceedings may have on Commerce's ability to administer its case load . . . do not constitute a reasonable explanation given the facts of this case.") (internal quotation marks omitted). Here, Commerce should not be permitted to rely on a claim of generalized prejudice stemming from a single late submission to overcome the extreme and disproportionate burden on Plaintiffs resulting from Commerce's decision.

In sum, Plaintiffs' interests of accuracy and fairness outweigh any trivial "burden" on Commerce by granting the extension request and accepting the substantive response. Commerce's denial of Plaintiffs' extension request and the resulting revocation of the AD order will cause extreme, immediate, and irreparable harm to Plaintiffs. The disproportionate nature of the prejudice to the domestic industry flowing from Commerce's decision cannot be overstated. Commerce's decision "represents an unreasonable judgment in weighing relevant factors," *id.* at 1364-65 (internal quotation marks and citation omitted), and therefore, should be set aside as an abuse of discretion.

## III. COMMERCE'S DISCRETION REGARDING DEADLINES DOES NOT JUSTIFY ITS DISPARATE TREATMENT OF PLAINTIFFS' EXTENSION REQUEST

Commerce's discretion with respect to its deadlines does not obviate the agency's obligation to avoid inconsistent treatment regarding extension requests. To the contrary, the Court has consistently (and recently) recognized that agencies may not engage in disparate treatment of similar situations. *See, e.g.*, *Celik AD*, __ C.I.T. at __, 485 F. Supp. 3d at 1412; *Celik Halat ve Tel Sanayi A.S. v. United States*, __ C.I.T. __, 483 F. Supp. 3d 1370, 1379 ("*Celik*

*CVD*") (Ct. Int'l Trade 2020). Indeed, "the court may review Commerce's decision to ensure that it is not 'treating similar situations in dissimilar ways.'" *Celik AD*, __ C.I.T. at __, 485 F. Supp. 3d at 1412 (quoting *Nakornthai Strip Mill Pub. Co. v. United States*, 32 C.I.T. 1272, 1276, 587 F. Supp. 2d 1303, 1307 (2008) (internal quotation marks and citations omitted)); *Celik CVD*, __ C.I.T. at __, 483 F. Supp. 3d at 1379 (same).

"{I} it well-established that an agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (internal quotation marks and citation omitted). As the Court has stated recently:

> {c}onsistency promotes fairness between parties, predictability that is critical to the administration of justice, and protects against arbitrary and capricious conduct by the institutions that issue determinations and decide disputes. As such, it is a core value of administrative law generally, and it is implicated in this court's review of agency determinations and the adjudication of controversies under the domestic laws regulating international trade.

*DAK Ams. LLC v. United States*, __ C.I.T. __, 456 F. Supp. 3d 1340, 1346 (Ct. Int'l Trade 2020) (internal citations omitted). Thus, where Commerce deviates from prior practice, as it did here, the agency must "explain whether (1) good reasons prompt that departure; or (2) the prior determinations are inapposite such that it is not in fact a departure at all." *Id.* at 1356 (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973); *British Steel PLC v. United States*, 127 F.3d 1471, 1475 (Fed. Cir. 1997); *Chisholm v. Def. Logistics Agency*, 656 F.2d 42, 47 (3d Cir. 1981)).

Here, however, Commerce fails to explain why it deviated from its history of accepting untimely submissions in other proceedings under less severe or, at least, analogous circumstances. While recognizing that Plaintiffs cited examples "of Commerce granting out-of-time requests," the agency then attempts puts the onus on Plaintiffs to explain why Commerce

deviated from its prior practice. Def.'s Br. at 12. As courts have repeatedly held, however, it is Commerce's burden to offer these reasons. *See generally SKF USA Inc.*, 263 F.3d at 1382; *DAK Ams. LLC*, __ C.I.T. at __, 456 F. Supp. 3d at 1355-56.

Commerce then argues that Plaintiffs "do not provide further context or otherwise explain the basis for their claim that Commerce has found extraordinary circumstances on facts like those presented here." Def.'s Br. at 12. As Commerce must be aware and as discussed below, examples abound of decisions where the agency granted untimely extension requests, many involving requests where the failure to meet the deadline appears to have been due to seemingly innocuous reasons, such as clerical errors by counsel.[3] Significantly, all of the untimely extension requests discussed below were granted after 19 C.F.R. § 301.302 was amended in 2013 to require "extraordinary circumstances" for such requests. Further, most of these requests post-date the 2015 *Dongtai Peak* decision of the Court of Appeals for the Federal Circuit, the case on which Commerce heavily relies as its basis for denying Plaintiffs' extension request here.

As discussed in Plaintiffs' opening brief, the facts of *Aluminum Extrusions from the People's Republic of China* — where counsel experienced "serious and unexpected medical issues" that occurred several weeks before the deadline — resemble those in the instant appeal. Letter from Sapa Profiles (Shanghai) Co., Ltd. to Sec'y of Commerce, *Aluminum Extrusions from the People's Republic of China: Sapa Profiles' Request for an Extension of Time to Respond to the Quantity and Value Questionnaire* (Sept. 8, 2014) (Dep't Commerce ACCESS Barcode 3227011-01). Like the situation before the Court now, Sapa Profiles' counsel subsequently provided further details of the medical issues that caused the late filing. *See* Letter

[3] The prior decisions discussed herein are examples where Commerce has granted retroactive extension requests and accepted untimely submissions. This list is not exhaustive.

from Sapa Profiles (Shanghai) Co., Ltd. to Sec'y of Commerce, *Aluminum Extrusions from the People's Republic of China: Further Explanation in Support of Sapa Profiles' Request for an Extension of Time to Respond to the Quantity and Value Questionnaire* (Sept. 17, 2014) (Dep't Commerce ACCESS Barcode 3228665-01) at 4. Also similar to the present case, Sapa Profiles tendered its untimely submission with its extension request. In contrast to the agency's response at issue here, however, Commerce granted Sapa Profiles' retroactive extension request, citing "the extraordinary circumstances." Letter from Erin Begnal, Program Manager, Office III, Antidumping and Countervailing Duty Operations, to Sapa Profiles (Shanghai) Co., Ltd., *2013 Administrative Review of the Countervailing Duty Order on Aluminum Extrusions from the People's Republic of China: Extension of Time to Provide a Response to the Department's Quantity and Value Questionnaire* (Sept. 22, 2014) (Dep't Commerce ACCESS Barcode 3230428-01).

Commerce fails to differentiate its decision in *Aluminum Extrusions* from the current case. In fact, Commerce's brief is entirely silent as to *Aluminum Extrusions*. Thus, the agency has failed to provide any explanation for its disparate treatment.

Commerce similarly did not provide sufficient (or any) justification for its different treatment of untimely extension requests in other cases that appear to be based on far less severe circumstances than those present here.

For example, in *Circular Welded Carbon Quality Steel Line Pipe from the People's Republic of China*, Commerce accepted the domestic interested parties' late notice of intent to participate in the sunset review, which the parties had failed to submit timely due to "a miscommunication with clerical staff" and "apparent lags in documents being uploaded to Access." Letter from Schagrin Associates to Sec'y of Commerce, *Notice of Intent to Participate*

*in Second Five-Year Review of the Antidumping and Countervailing Duty Orders on Circular Welded Carbon Quality Steel Line Pipe from the People's Republic of China – Request for Extension of Deadline and Acceptance of Submission* (Apr. 17, 2019) (Dep't Commerce ACCESS Barcode 3821488-01); *see also* Letter from Erin Begnal, Director, AD/CVD Operations, Office III, to Schagrin Associates, *Sunset Review of Countervailing Duty Order on Circular Welded Carbon Quality Steel Line Pipe from the People's Republic of China: Acceptance of Notice of Intent to Participate* (Apr. 18, 2019) (Dep't Commerce ACCESS Barcode 3821817-01) ("Commerce Acceptance Letter"). Interestingly, Commerce did not base its decision on the "extraordinary circumstances" standard, but instead, granted the extension "{b}ased on the measures outlined in the letter, which refer to procedures being implemented by your firm to prevent the recurrence of a missed deadline{.}" Commerce Acceptance Letter at 1.

In *Carbon and Certain Alloy Steel Wire Rod from Mexico*, Commerce granted an untimely extension request where counsel encountered printer jams that rendered it unable to timely submit materials. *See* Letter from Wiley Rein LLP to Sec'y of Commerce, *Carbon and Certain Alloy Steel Wire Rod from Mexico: Extension Request for New Factual Information in Response to Deacero's Supplemental Section D and E Questionnaire Responses* (Aug. 25, 2017) (Dep't Commerce ACCESS Barcode 3611780-01); Letter from Brendan Quinn, Program Manager, AD/CVD Operations, Office III, to Nucor Corporation, *2015-2016 Administrative Review of the Antidumping Duty Order on Carbon and Certain Alloy Steel Wire Rod from Mexico: Request for Extension of Deadline to Submit Comments for Deacero's Sections D and E Supplemental Questionnaire Responses* (Aug. 25, 2017) (Dep't Commerce ACCESS Barcode 3611722-01).

In *Certain Softwood Lumber Products from Canada*, Commerce accepted an untimely submission where counsel "overlooked" a deadline due to a "culmination of a number of factors" that included inclement weather. Letter from Akin Gump Strauss Hauer & Feld LLP to Sec'y of Commerce, *Certain Softwood Lumber Products from Canada: Government of British Columbia Request for Extension* (Mar. 16, 2017) (Dep't Commerce ACCESS Barcode 3552802-01); *see also* Letter from Dana S. Mermelstein, Program Manager, AD/CVD Operations, Office I, to Government of British Columbia (Mar. 17, 2017) (Dep't Commerce ACCESS Barcode 3553216-01).

In *Narrow Woven Ribbons with Woven Selvedge from Taiwan*, Commerce granted an untimely extension request where the party's counsel committed "an inadvertent, clerical error" and failed to include certain sections of a questionnaire response in its original (timely) extension request. Letter from Akin Gump Strauss Haer and Feld LLP to Sec'y of Commerce, *Narrow Woven Ribbons with Woven Selvedge from Taiwan: Request Reconsideration of Sec. D Extension Request* (Feb. 18, 2015) (Dep't Commerce ACCESS Barcode 3260204-01), at 3; *see also* Letter from Shawn Thompson, Program Manager, AD/CVD Operations, Office II, Enforcement and Compliance, to Akin Gump Strauss Haer and Feld LLP, *Narrow Woven Ribbons with Woven Selvedge from Taiwan: 2013-2014 Antidumping Duty Administrative Review* (Feb. 27, 2015) (Dep't Commerce ACCESS Barcode 3261940-01).

In *Certain Cold-Rolled Steel Flat Products from Korea*, Commerce retroactively granted an extension permitting a party to submit its questionnaire response after the deadline had been missed due to the "year-end holiday period." Letter from Arnold & Porter LLP to Sec'y of Commerce, *Certain Cold-Rolled Steel Flat Products from Korea: Extension Request for Supplemental Section D Questionnaire Response* (Jan. 5, 2016) (Dep't Commerce ACCESS

Barcode 3429991-01) at 2; *see also* Letter from Robert M. James, Program Manager, AD/CVD Operations, Office VI, to File, *Antidumping Duty Investigation of Cold-Rolled Steel Products from Korea: Ex Parte Meeting with Arnold & Porter, LLP, Counsel to Hyundai Steel Company* (Jan. 16, 2016) (Dep't Commerce ACCESS Barcode 3431804-01).

In *Carbon and Certain Alloy Steel Wire Rod from the United Kingdom*, Commerce granted an untimely extension where the deadline had been missed because counsel had "inadvertently overlooked the specific 10:00 am deadline" due to the July 4th holiday, a docketing error that did not include the time the submission was due, and simultaneous work being performed by counsel on other sections of the questionnaire response. Letter from Steptoe & Johnson LLP to Sec'y of Commerce, *Carbon and Certain Alloy Steel Wire Rod from the United Kingdom: British Steel Request for Extension* (Jul. 7, 2017) (Dep't Commerce ACCESS Barcode 3590026-01) at 2-3; *see also* Letter from Shawn Thompson, Program Manager, Office II, AD/CVD Operations, Enforcement & Compliance, to Steptoe & Johnston LLP, *Less-than-Fair-Value Investigation on Carbon and Alloy Steel Wire Rod from the United Kingdom* (Jul. 10, 2017) (Dep't Commerce ACCESS Barcode 3591490-01).

Similarly, in *Citric Acid and Certain Citrate Salts from Thailand*, Commerce accepted an untimely questionnaire response where counsel had "overlooked" the 10:00 AM filing deadline. Letter from Harris Bricken McVay, LLP to Sec'y of Commerce, *Citric Acid and Certain Citrate Salts from Thailand: Section A-C Second Supplemental Questionnaire Response Extension Request* (Nov. 17, 2017) (Dep't Commerce ACCESS Barcode 3642674-01) at 2; Letter from Eric B. Greynolds, Program Manager, Office III, AD/CVD Operations, Enforcement & Compliance, to Niran (Thailand) Co., Ltd. (Nov. 17, 2017) (Dep't Commerce ACCESS Barcode 3642978-01).

In *Certain Fine Denier Polyester Staple Fiber from India*, counsel committed "a procedural error" and inadvertently uploaded a questionnaire response to the ITC's website instead of Commerce's ACCESS website. Letter from APJ-SLG Law Office to Sec'y of Commerce, *Countervailing Duty Investigation of Fine Denier Polyester Staple Fiber from India: Response to Section III Identifying Affiliated Companies* (Aug. 18, 2017) (Dep't Commerce ACCESS Barcode 3609072-01) at 1. Counsel then failed to upload the document to ACCESS, even after receiving an email from Commerce, "as they were still under the impression that the documents already stand uploaded." *Id.* Based on this explanation and the procedures implemented by the law firm, Commerce permitted the company to submit its questionnaire response. *See* Letter from Abdelali Elouaradia, Office Director, Enforcement & Compliance, Office IV, to APJ-SLG Law Office (Aug. 23, 2017) (Dep't Commerce ACCESS Barcode 3610785-01).

In *New Pneumatic Off-the-Road Tires from the People's Republic of China*, Commerce accepted an untimely filing where counsel missed the deadline due to a "docketing error" resulting from the departure of the firm's "long-term docketing clerk" and "{m}iscommunication between {counsel} and our new clerk," which counsel claimed to constitute an extraordinary circumstance under Commerce's regulation. Letter from Clark Hill PLC to Sec'y of Commerce, *New Pneumatic Off-the-Road Tires from the People's Republic of China* (Dec. 19, 2016) (Dep't Commerce ACCESS Barcode 3530805-01) at 1-2; *see also* Letter from Brendan Quinn, Program Manager, Office III, AD/CVD Operations, to Clark Hill PLC (Dec. 20, 2016) (Dep't Commerce ACCESS Barcode 3530938-01).

In *Fresh Garlic from the People's Republic of China*, Commerce accepted untimely comments on draft results of redetermination, where "counsel inadvertently did not note that the

Department had made an earlier deadline of 12:00pm rather than a COB deadline." DeKieffer & Horgan PLLC to Sec'y of Commerce, *Commerce's Final Results of Redetermination in Antidumping Duty Administrative Review Sustained in Part and Remanded in Part, CIT No. 14-00180, Slip Op. 16-68: Shenzhen Xinboda Industrial Co. Ltd.'s Comments on Draft Remand Results* (Oct. 27, 2016) (Dep't Commerce ACCESS Barcode 3517360-01); *see also* Memorandum from Thomas Gilgunn, Program Manager AD/CVD Operations, Office VII, to the File, *Commerce's Final Results of Redetermination in Antidumping Duty Administrative Review Sustained in Part and Remanded in Part, CIT No. 14-00180, Slip Op. 16-68: Shenzhen Xinboda Industrial Co. Ltd.'s Comments on Draft Remand Results* (Nov. 1, 2016) (Dep't Commerce ACCESS Barcode 3518352-01).

In *Uncovered Innerspring Units from the People's Republic of China*, counsel encountered a "technical glitch" resulting in counsel's failure to receive notice from the agency of a deadline. Letter from Mitchell Silberberg & Knupp LLP to Sec'y of Commerce, *Uncovered Innerspring Units from the People's Republic of China AR6: Response to Department Letter dated June 15, 2016* (June 16, 2016) (Dep't Commerce ACCESS Barcode 34790039-01). "Based on the measures outlined in {counsel's} June 16, 2016 letter, which refers to procedures being implemented by {the} firm to prevent the recurrence of such a missed deadline," Commerce permitted counsel to submit the untimely submission. Letter from Julia Hancock, Acting Program Manager, Office V, Enforcement & Compliance, to Mitchell Silberberg & Knupp LLP, *Untimely Submitted Responses to the Department's April 15th, 2016 Antidumping Duty Post Preliminary Results Supplemental Questionnaire* (Jul. 20, 2016) (Dep't Commerce ACCESS Barcode 3489231-01).

In *Certain Polyethylene Terephthalate from the People's Republic of China*, counsel "inadvertently calendared an extended date," and thus, missed the deadline. Letter from DeKieffer & Horgan, PLLC to Sec'y of Commerce, *Certain Polyethylene Terephthalate Resin from the People's Republic of China — Request to Accept Section A Response* (June 23, 2015) (Dep't Commerce ACCESS Barcode 3286027-01); *see also* Letter from DeKieffer & Horgan, PLLC to Sec'y of Commerce, *Certain Polyethylene Terephthalate Resin from the People's Republic of China – Supplemental Information to June 23, 2015 Letter* (June 26, 2016) (Dep't Commerce ACCESS Barcode 3286819-01). Again, Commerce accepted the untimely submission "{b}ased on the measures outlined in your June 26, 2015 letter, which refers to procedures being implemented by your firm to prevent the recurrence of such a missed deadline." Letter from Robert James, Program Manager, AD/CVD Operations, Office VI, to DeKieffer & Horgan, PLLC, *Section A of the Department's May 22, 2015 Antidumping Questionnaire ("Section A")* (June 29, 2015) (Dep't Commerce ACCESS Barcode 3287091-01) at 1.

As demonstrated above, Commerce's practice with respect to extension requests is entirely inconsistent with its determination here. Commerce fails to provide sufficient reasons for its different treatment of Plaintiffs' extension request that involves extraordinary circumstances versus the numerous occasions where the agency has granted extension requests based on less severe (or at least similar) reasons. Commerce's unexplained disparate treatment amounts to unlawful arbitrary and capricious action that should be set aside.

## CONCLUSION

We conclude this reply as we began our opening brief, with the observation that the abuse of discretion that is before this Court is as egregious as it is obvious. Therefore, Plaintiffs

respectfully request that the Court enter judgment in their favor, holding unlawful and setting aside Commerce's *Final Results* that are the subject of this Complaint; remanding this proceeding to Commerce with instructions to reinstate the AD order, to grant Plaintiffs' request for retroactive extension of the deadline to file their substantive response to the *Notice of Initiation* in this five-year review of the AD order on chloropicrin from China; to accept Plaintiffs' substantive response on the record of the underlying review; to promptly notify the ITC that Commerce has received a timely-filed substantive response from the domestic interested parties; to promptly determine the adequacy of Plaintiffs' substantive response and to notify Plaintiffs and the ITC of those results; to perform such other actions in the underlying review as required by law; and granting Plaintiffs such additional relief as the Court may deem just and proper.

Respectfully submitted,

Dated: June 17, 2021

*/s/ Adam H. Gordon*

Adam H. Gordon, Esq.
Jennifer M. Smith, Esq.
Ping Gong, Esq.
Lauren Fraid, Esq.

**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 570
Washington, DC 20036
Tel.: (202) 991-2701
adam.gordon@bristolgrouplaw.com

*Counsel to Plaintiffs Trinity Manufacturing, Inc., Ashta Chemicals, Inc., and Niklor Chemical Company, Inc.*

**PUBLIC VERSION**

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedure 2(B), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Reply Brief, as computed by The Bristol Group PLLC's word processing system Microsoft Word 2016, is 6,214 words, less than the 7,000 word limit.

*/s/ Adam H. Gordon*
Adam H. Gordon

**THE BRISTOL GROUP PLLC**

*Counsel to Plaintiffs Trinity Manufacturing, Inc., Ashta Chemicals, Inc., and Niklor Chemical Company, Inc.*

Dated: June 17, 2021